United States District Court
For the Northern District of California

1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   JONATHAN CRAIG ELFAND,                    No. C 11-0863 WHA (PR)

11            Plaintiff,                         ORDER GRANTING IN PART AND
                                                 DENYING IN PART MOTION TO
12      v.                                       DISMISS; SCHEDULING MOTION
                                                 FOR SUMMARY JUDGMENT;
13   SONOMA COUNTY SHERIFF-                      STRIKING AND REPLACING
     CORONER STEVE FREITAS;                      DEFENDANT
14   FORMER SONOMA COUNTY
     SHERIFF-CORONER WILLIAM
15   COGBILL,

16            Defendants.                        (Docket No. 8)
     _____/
17

18                              **INTRODUCTION**

19            Plaintiff filed this pro se civil rights action under 42 U.S.C. 1983 against the Sonoma

20   County Men's Adult Detention Facility ("MADF").  He has since been released from MADF

21   and now resides in New Jersey.  Following a review of plaintiff's complaint under 28 U.S.C.

22   1915(a), service was ordered and dispositive motions were scheduled.  The Sonoma County

23   Counsel has specially appeared on behalf of the Sonoma County Sheriff-Coroner ("Sheriff"),

24   the administrator of MADF, because MADF itself is a building and not a government entity.  So

25   appearing, the Sheriff has filed a motion to dismiss, plaintiff has filed an opposition, and the

26   Sheriff has filed a reply brief.  For the reasons discussed below, the motion to dismiss is

27   **GRANTED IN PART AND DENIED IN PART**, and summary judgment motions are scheduled.

28   //

**United States District Court**
For the Northern District of California

**STATEMENT**

Plaintiff alleges the following facts in his complaint: MADF had a mail policy when plaintiff was incarcerated there prohibiting publications depicting sexually oriented material (Compl. 3).  Pursuant to this policy, plaintiff was denied every issue of "Maxim" and "GQ" magazines between February 2010 and February 2011 (when he drafted his complaint); three issues of "Muscle and Fitness" magazine, on July 7, 2010, December 11, 2010, and December 20, 2010; one issue of "Robb Report" on August 9, 2010; and one issue of "Wired" magazine on December 2, 2010 (*ibid.*).  Plaintiff states that these magazines do not present fully nude subjects or depictions of obscene acts; rather they simply have "scantily clad photos (bikinis) and suggestive poses" (*ibid.*).  Plaintiff claims that banning these magazines violated his First Amendment rights.  Plaintiff requests injunctive relief in the form of an order from the court to require MADF staff to change the policy and deliver to him all of the issues of the magazines that were withheld from him (*id.* at 3-4).  He also seeks $5000 in damages (*id.* at 4).

The Sheriff has submitted for judicial notice a copy of the mail policy in effect at MADF at the time plaintiff's magazines were banned.  The mail policy states in relevant part:

> **Sexually-Oriented Materials:** The introduction of sexually-oriented material into the Facility shall be restricted.  It may be prohibited if there is a reasonable belief that the material will jeopardize safety, security, rehabilitation, or other legitimate Facility interests, or create a hostile work environment or other violation of Title VII of the 1964 Civil Rights Act.
>
> 1. Inmates shall not receive, distribute or possess inside the Facility , mail containing sexually -oriented material.  Any sexually-oriented material meeting the following criteria will be deemed contraband:
>
>    a. Depicts violence, sexual contacts (real or feigned), and intimate sexual contacts;
>    b. Depicts the fully-unclothed human form in a manner that appeals to the prurient interests; or
>    c. Depicts the partially-unclothed human form with exposure of the genitalia or the female areola.
>
> 2. Sexually-oriented materials depicting sadomasochism, rape, or other violent sex acts have a greater likelihood of heightened sexual interest in such acts.  It places Correctional Deputies in fear of increased personal risk of assault and/or harassment.
>
>    a. Regarding nude pictures of the human form, the Courts have interpreted Title VII, 1964 Civil Rights Act in a manner that it is unlawful to require Staff to be exposed to a hostile work environment.  Displaying sexually-

**United States District Court**
For the Northern District of California

oriented material in the Facility has been found to create a hostile work environment for staff and inmates.

b. It is well established that inmates frequently objectify their victims. By seeing others as objects it helps the criminal to depersonalize acts of murder, rape, theft, fraud, child molest, or other criminal acts. Providing or allowing inmates' access to sexually-oriented materials that portray models as objects for sexual gratification is counterproductive to their appropriate jail conduct.

(Def. Req. Jud. Not. ("RJN"), Ex. A at 5-6).

The Sheriff argues that plaintiff's claim should be dismissed because it is partially unexhausted and fails to state a cognizable claim for relief.

**ANALYSIS**

**I.   Judicial Notice**

Plaintiff does not oppose the request by the Sheriff for judicial notice of the mail policy at MADF described above and of the fact that the Sheriff is the administrator of MADF. Accordingly, the Sheriff's request for judicial notice is **GRANTED**.

**II.  Exhaustion**

The Sheriff argues that plaintiff has only exhausted part of his claim. Section 1997e of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001).

Nonexhaustion under Section 1997e(a) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. A nonexhaustion claim should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding such a motion – a motion to dismiss for failure to exhaust nonjudicial remedies – the court may look beyond the pleadings and decide disputed issues of

1    fact.  *Id.* at 1119-20.  If the court concludes that the prisoner has not exhausted nonjudicial

2    remedies, the proper remedy is dismissal without prejudice.  *Id.* at 1120.

3           The parties agree that plaintiff filed only one administrative grievance about the

4    confiscation of his magazines (Compl. 2, MTD 5, Opp. 2).  He filed the grievance on March 26,

5    2010, and jail officials denied it at all of the four levels of administrative review on the grounds

6    that the magazines violated MADF's policy against sexually oriented materials (Compl. 2).

7    The grievance was denied at the final level of review on April 9, 2010, meaning that it only

8    addressed magazines that had been confiscated up to that date, and not the magazines that

9    plaintiff alleges were confiscated later.  According to the complaint, jail officials confiscated an

10   unspecified number of issues of "GQ" and "Maxim" prior to April 2010; subsequent issues of

11   those magazines, as well as issues of "Muscle and Fitness," the "Robb Report" and "Wired,"

12   were confiscated later in 2010 and 2011.  Consequently, the grievance only exhausts the part of

13   plaintiff's claim complaining about the confiscation of issues of "GQ" and "Maxim" between

14   February 2010 and April 9, 2010.

15          Plaintiff asserts that he did not need to continue to grieve the confiscation of his

16   magazines after his grievance was denied in April 2010 because he had already "tested the

17   waters" and any future grievances would have been "unnecessary" (Opp. 2).  In *Booth* the

18   United States Supreme Court was emphatic about the nature of the exhaustion requirement:

19   "[W]e stress the point ... that we will not read futility or other exceptions into statutory

20   exhaustion requirements where Congress has provided otherwise."  *Booth*, 532 U.S. at 741 n.6.

21   The failure of plaintiff's first grievance on April 9, 2010, did not excuse his obligation under

22   Section 1997e(e) to continue to exhaust his administrative remedies concerning the subsequent

23   confiscation of different issues and different magazines before filing his claim in federal court.

24          The Sheriff has shown that plaintiff has only exhausted his claim with respect to the

25   confiscation of magazines up to April 9, 2010, specifically issues of "GQ" and "Maxim."  His

26   claim that the confiscation of magazines after that date violated his First Amendment rights has

27   not been exhausted and will be dismissed under Section 1997e(e) without prejudice.

28

                                              4

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   Failure to State a Cognizable Claim for Relief

The Sheriff argues that plaintiff's claim that the confiscation of his magazines violated the First Amendment should be dismissed for failure to state a cognizable claim for relief.

A.   Standard of Review

Failure to state a claim is a grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dismissal for failure to state a claim is a ruling on a question of law. *Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995).  "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotations omitted).  Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1986-87.  A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570; *see, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009).

Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. *Id.* at 688 (discussing Fed. R. Evid. 201(b)).  Allegations of fact in the complaint must be taken as true and construed in the

United States District Court

For the Northern District of California

1   light most favorable to the non-moving party.  *Sprewell v. Golden State Warriors*, 266 F.3d

2   979, 988 (9th Cir. 2001).  The court need not, however, "accept as true allegations that are

3   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Ibid.*

4          A *pro se* pleading must be liberally construed, and "however inartfully pleaded, must be

5   held to less stringent standards than formal pleadings drafted by lawyers."  *Twombly*, 550 U.S.

6   at 570 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Allegations of fact in the

7   complaint must be taken as true and construed in the light most favorable to the non-

8   moving party.  *Symington*, 51 F.3d at 1484.

9          B.     Analysis

10                1.     First Amendment

11         The Sheriff argues that the confiscation of plaintiff's magazines pursuant to the MADF

12  mail policy did not violate the First Amendment because the policy is constitutional.

13  Imprisonment does not automatically deprive a prisoner of certain important constitutional

14  protections, including those of the First Amendment.  *Beard v. Banks*, 548 U.S. 521, 527

15  (2006).  However, the Constitution does permit greater restriction of such rights in a prison than

16  it would allow elsewhere.  *Id.* at 527-30.  Moreover, courts owe "substantial deference to the

17  professional judgment of prison administrators."  *Overton v. Bazzetta*, 539 U.S. 126, 132

18  (2003).

19         Regulations limiting prisoners' access to publications or other information are valid only

20  if they are reasonably related to legitimate penological interests.  *Thornburgh v. Abbott*, 490

21  U.S. 401, 413 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).  This determination

22  entails consideration of four factors: (1) whether there is a rational relationship between the

23  regulation and the proffered legitimate government interest; (2) whether inmates have

24  alternative means of exercising their asserted rights; (3) how accommodation of the claimed

25  constitutional right will affect guards, a prisoner's fellow inmates, and the allocation of prison

26  resources; and (4) whether the policy is an "exaggerated response" to the prison's concerns.  A

27  prison regulation that limits a prisoner's exercise of his or her constitutional rights will be

28  upheld where it "reasonably relate[s] to a legitimate penological interest."  *Turner v. Safley*, 482

United States District Court

For the Northern District of California

U.S. 78, 89 (1987); *see Mauro v. Arpaio*, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc). Plaintiff bears the burden of proving that the regulations are not valid under *Turner*.  *Overton v. Bazzetta*, 539 U.S.  126, 132 (2003).

When accepting plaintiff's factual allegations as true, liberally construing them, and also drawing all inferences therefrom from in plaintiff's favor, as must be done at this stage, plaintiff has stated a cognizable claim that the confiscation of his magazines prior to April 9, 2010, violated the First Amendment.  The Sheriff cites a number of cases upholding policies banning materials that depict nudity, partial nudity revealing genitalia or breasts, and actual or simulated sexual acts or behaviors, from prisons and jails.  *See, e.g.*, *Mauro*, 188 F.3d at 1057 (upholding ban on materials depicting frontal nudity); *Frost v. Symington*, 197 F.3d 348 (9th Cir. 1999) (ban on sexually-explicit materials); *Bahrampour v. Lampert*, 356 F.3d 969 (9th Cir. 2004) (upholding refusal to deliver depictions of actual or simulated sexual acts).  The alleged actions of jail officials here went significantly beyond such bans, however.  Here, jail officials allegedly banned entire issues of magazines because they contained photographs of non-nude people in bikinis and in "suggestive" poses (Compl. 3).  If true, such a ban could extend to virtually any magazine or newspaper simply because of a single advertisement for swim wear, for example. Indeed, the allegation that jail officials blocked the "Robb Report" and "Wired," while unexhausted as an independent claim, nonetheless suggests that an exaggerated response might have taken place because such magazines are "far from the genre" of sexually-oriented publications (*ibid.*).

The Sheriff characterizes plaintiff's claim as a "facial" challenge to the MADF policy, asserting that plaintiff is alleging that jail officials did not act outside of the scope of the policy. It is not at all clear, however, whether jail officials acted within or without the scope of the policy when they allegedly banned plaintiff's magazines.  Plaintiff has alleged that in denying his grievances, jail officials stated that the banned magazines set forth "nudity (frontal or partial), sexually-oriented material, visual depictions arousing sexual stimulation" (Compl. 2). The policy does not state that "visual depictions arousing sexual stimulation" are banned; the closest language in the policy is in Section C.1.a., which bans depictions of  "sexual contacts

United States District Court

For the Northern District of California

(real or feigned), and intimate sexual contact," but this is distinct from what the jail officials said in response to plaintiff's grievance (RJN Ex. A at 5-6). In any case, as indicated above, the controlling cases cited by the Sheriff have not upheld bans as broad as what plaintiff has alleged took place here – namely bans on entire issues of magazines because they contained photographs of non-nude people in bikinis or in "suggestive" poses.

As this is a motion to dismiss under Rule12(b)(6), evidence of what the banned magazines actually depicted cannot be considered. The Sheriff will have the opportunity to present such evidence in a motion for summary judgment, as well as evidence on all of the *Turner* factors, including whether the offending material in the magazine could have been redacted or removed without confiscating the entire magazine. At this stage of the litigation, however, when plaintiff's allegations must be taken as true, liberally construed, and viewed in a light most favorable to plaintiff, and non-judicially noticeable evidence outside of the complaint cannot be considered, plaintiff has stated a cognizable claim for the violation of his First Amendment rights.

2.  Proper Defendant

The Sheriff has shown that the named defendant, MADF, is not a government entity but is simply one of two buildings in which county jail inmates are housed in Sonoma County. As the MADF is neither an individual or government entity, it is not a "person" subject to liability under 42 U.S.C. 1983. The administrator of the building is the Sheriff-Coroner of Sonoma County, formerly William Cogbill and currently Steve Freitas. Plaintiff has requested that his complaint be amended such that MADF is stricken as the defendant and is replaced by Cogbill, Freitas and "the mail room staff of the MADF" as "Doe" defendants.

The Sheriff at the time of plaintiff's incarceration, originally Cogbill and later Freitas, can be named as a defendant. When liberally construing the complaint in plaintiff's favor, it can be reasonably inferred that the Sheriff was responsible for implementing and carrying out the policy to which plaintiff objects. To the extent the Sheriff has evidence to the contrary, it can be presented in a summary judgment motion.

Although the use of "John Doe" to identify a defendant is not favored in the Ninth

**United States District Court**
For the Northern District of California

1  Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), situations may arise where

2  the identity of alleged defendants cannot be known prior to the filing of a complaint.  In such

3  circumstances, the plaintiff should be given an opportunity through discovery to identify the

4  unknown defendants, unless it is clear that discovery would not uncover their identities or that

5  the complaint should be dismissed on other grounds.  *Ibid.* Discovery has been open since the

6  order of service was issued, nearly a year ago.  Plaintiff has had more than enough time to

7  discover the names of the mailroom staff whom he alleges violated his rights.  Accordingly, he

8  will not be allowed to add unnamed "Doe" defendants.  If he discovers the names of additional

9  defendants who violated his rights, he can seek leave to amend his complaint in the future to

10  add them as defendants.

11        Accordingly, defendant MADF will be stricken from the complaint and replaced by

12  Cogbill and Freitas as defendants

13                  3.    <u>Eleventh Amendment Immunity</u>

14        The Sheriff also argues that he, other jail staff, and the County of Sonoma are immune

15  from suit under the Eleventh Amendment.  The Eleventh Amendment does not bar suits against

16  cities and counties or their officials unless they act as an "arm of the State."  *See Mt. Healthy*

17  *City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Regents of the University of*

18  *California v. Doe*, 519 U.S. 425, 429 n.5 (1997).  That federal question can be answered only

19  after considering the provisions of state law that define the local government entity's character.

20  *Ibid.*  The Ninth Circuit has rejected defendant's argument.  *See Brewster v. Shasta County*, 275

21  F.3d 803, 805-06 (9th Cir. 2001) (California county sheriff's department acts for county rather

22  than state when investigating crime, thus county may be subject to § 1983 liability); *Streit v.*

23  *County of Los Angeles*, 236 F.3d 552, 567 (9th Cir. 2001) (California county sheriff is not an

24  arm of the state when he acts in his function as administrator and manager of county jail and

25  therefore he can be sued under § 1983 for damages for conducting background checks before

26  releasing inmates).  The California Supreme Court has disagreed with the Ninth Circuit's

27  decisions.  *See Venegas v. County of Los Angeles*, 32 Cal.4th 820, 829 (2004).  The Ninth

28  Circuit's decisions, not those of the California Supreme Court, are controlling here on the

federal question of whether or not county officials can be considered an arm of the state for purposes of Eleventh Amendment immunity.  Consequently, plaintiff can name the Sheriff as a defendant in this case.

### 4.    Relief

Plaintiff seeks damages and injunctive relief.  "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. 1997e(e). Claims for declaratory and injunctive relief are unaffected by Section 1997e(e), however, *Zehner v. Trigg*, 133 F.3d 459, 464 (7th Cir. 1997), as are claims for nominal or punitive damages, *see Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002); *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000).  As plaintiff does not allege any physical injury arising from the alleged constitutional violation, he may not obtain damages for any emotional or mental injury.  He is not barred from recovering damages for some other kind of injury he can show, such as the loss of the magazines, or from recovering punitive or nominal damages.

In addition, part of the injunctive relief he seeks is not allowed.  He seeks to have MADF officials to be ordered to change the MADF policy and to return the banned magazines to him.  Plaintiff does not have standing to seek a change to the policy because he is no longer incarcerated at MADF and therefore is not subject to their policies.  He may seek an injunction to have the magazines returned to him.

### CONCLUSION

1.  Defendants' motion to dismiss (docket number 8) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claim that his First Amendment rights were violated based on being deprived of magazines after April 9, 2010, is **DISMISSED** without prejudice for lack of exhaustion.  Plaintiff's claim for an injunction ordering the Sheriff to change the mail policy at the Sonoma County Men's Adult Detention Facility is **DISMISSED**.  Plaintiff's other claims are allowed to proceed.

2.  Defendant Sonoma County Men's Adult Detention Facility is **STRICKEN** from the complaint and replaced as defendants by Sonoma County Sheriff-Coroner Steve Freitas and

**United States District Court**
For the Northern District of California

10

former Sonoma County Sheriff-Coroner William Cogbill as defendants.

3. In order to expedite the resolution of this case, the court orders as follows:

a. No later than ninety days from the date this order is filed, defendants shall file a motion for summary judgment.  If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date the summary judgment motion is due.  All papers filed with the court shall be promptly served on the plaintiff.

b. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the court and served upon defendants no later than thirty days from the date the motion is filed. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

c. Defendants **shall** file a reply brief no later than fifteen days after the date the opposition is filed.

d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

4. All communications by the plaintiff with the court must be served on defendant, or defendant's counsel once counsel has been designated, by mailing a true copy of the document to defendant or defendant's counsel.

5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

//

//

**United States District Court**
For the Northern District of California

6.  It is the plaintiff's responsibility to prosecute this case.  Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: March __13__, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.11\ELFAND0863.MTD12b6.wpd

**United States District Court**
For the Northern District of California

12

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE -- WARNING**

**(SUMMARY JUDGMENT)**

If defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.