IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN CRAIG ELFAND,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF SONOMA; SHERIFF-<br>CORONER STEVE FREITAS;<br><br>    Defendants.<br>                                  / | No. C 11-0863 WHA (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 22) |

## INTRODUCTION

Plaintiff was an inmate in Sonoma County Jail when he filed this pro se civil rights action under 42 U.S.C. 1983 claiming that his First Amendment right to receive magazines were violated when he was incarcerated there. He has since been released from the jail and now resides in New Jersey. Defendants' motion to dismiss was granted in part. Following that order, the remaining defendants are the County of Sonoma and the Sonoma County Sheriff-Coroner Steve Frietas in his official capacity. These defendants have filed a motion for summary judgment. Plaintiff has filed a brief opposition, and defendants have filed a reply. For the reasons discussed below, the motion for summary judgment is **GRANTED**.

## ANALYSIS

**A.** **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect

the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid*.

**B.   PLAINTIFF'S CLAIM**

Plaintiff claims that defendants violated his First Amendment rights by denying magazines he subscribed to on the grounds that they violated the jail's policy against sexually-oriented material (Compl. 3). Following defendants' motion to dismiss for lack of exhaustion, the portion of plaintiff's claim that remains concerns the denial of three issues of *Maxim* magazine and one issue of *GQ* magazine in February 2010 (*ibid.*; Toby Decl. ¶ 7, Exh. B).

As an initial matter, it is noted that the only relief available to plaintiff is for nominal damages. He seeks injunctive relief directing the jail to return the confiscated magazines to him and to change its policies against sexually-oriented material (Compl. 3-4). This request is moot because defendants have returned the magazines to plaintiff now that he is no longer in jail (Toby Decl. Exh. D), and his release from the jail deprives him of standing to obtain an injunction changing the jail's practice and procedures. Plaintiff also seeks $5000 in damages "for denying his First Amendment rights" (Compl. 4). Plaintiff cannot recover compensatory damages because the magazines were returned to him, and damages for emotional or mental injury are barred because there is no physical injury, *see* 42 U.S.C. 1997e(e). Punitive damages also cannot be recovered against defendants because they are a municipality and a county official sued in his official capacity only. *See City of Newport v. Fact Concepts, Inc.*, 453 U.S. 247, 271 (1981) (prohibiting punitive damage recovery against municipality); *see also*

1   *McMillan v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (county official sued in official
2   capacity is same as suit against county). Thus, plaintiff's remaining claim is for nominal
3   damages based on the denial of four magazines while he was in defendants' custody.

4       Defendants argue that the jail policy prohibiting sexually-oriented materials and the
5   denial of the four magazines pursuant to that policy was constitutional. The policy is described
6   in detail in the order of dismissal. In addition to banning depictions of sexual acts and
7   unclothed genitalia and female areolae, the policy bans pictures that have "the purpose of
8   arousing sexual stimulation in its intended audience" if "there is a reasonable belief that the
9   material will jeopardize safety, security, rehabilitation or other legitimate Facility interests, or
10  create a hostile work environment of other violation of [federal laws against workplace
11  discrimination]" (Toby Decl. Exh. A at 3, 5-6).

12      Imprisonment does not automatically deprive an inmate of certain important
13  constitutional protections, including those of the First Amendment. *Beard v. Banks*, 548 U.S.
14  521, 527 (2006). However, the Constitution does permit greater restriction of such rights in a
15  prison than it would allow elsewhere. *Id.* at 527-30. Regulations limiting prisoners' access to
16  publications or other information are valid only if they are reasonably related to legitimate
17  penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *see Mauro v. Arpaio*,
18  188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc). This determination entails consideration of
19  the four-factor test set forth in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987): (1) whether there is
20  a rational relationship between the regulation and the proffered legitimate government interest;
21  (2) whether inmates have alternative means of exercising their asserted rights; (3) how
22  accommodation of the claimed constitutional right will affect guards, a prisoner's fellow
23  inmates, and the allocation of prison resources; and (4) whether there are easy or obvious
24  alternatives to the policy such that the policy is an "exaggerated response" to the prison's
25  concerns. *Ibid.* Courts owe "substantial deference to the professional judgment of prison
26  administrators," and plaintiff bears the burden of proving that the regulations are not valid
27  under the *Turner* factors. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

28      Defendants have presented evidence, undisputed by plaintiff, of legitimate government

1 interests rationally served by their policy against sexually-oriented materials in jail. This
2 evidence indicates that sexually-oriented materials exacerbate sexual harassment of jail staff,
3 especially female staff, which undermines important government interests in two ways: first, it
4 creates a hostile work environment for the staff, in violation of federal employment laws, and
5 second such harassment diminishes respect for and the authority of jail officers, which in turn
6 increases inmate rule-breaking (Toby Decl. ¶ 8). In addition, defendants' evidence indicates
7 that sexually stimulating materials can increase sexual aggression and non-consensual sex
8 between inmates, and allows inmates to depersonalize past and potential future victims insofar
9 as it depicts women or men as sex objects (*ibid.*).

10 Federal courts have recognized these government interests as legitimate and rationally
11 related to bans on sexually-oriented materials in prisons and jails. *See Bahrampour v. Lampert*,
12 356 F.3d 969, 976 (9th Cir. 2004) (rational connection between sexually oriented materials and
13 harmful inmate behavior such as sexual predation); *Mauro*, 188 F.3d at 1059 (reducing sexual
14 harassment of guards and protecting their safety is legitimate and rationally related to ban on
15 sexually oriented materials); *Dawson v. Scurr*, 986 F.2d 257 (8th Cir. 1993) (rational relation
16 between ban on pornography and curtailing sexual aggression by inmates). The courts have
17 upheld bans that extend not only to overt depictions of sexual acts and unclothed genitalia, but
18 also to sexually-oriented or stimulating materials similar to those denied in this case. *See*
19 *Bahrampour*, 356 F.3d at 976 (upholding denial of issues of *Muscle Elegance* magazine);
20 *Zarate v. Tilton*, 2009 U.S. Dist. LEXIS 14345 (N.D. Cal. 2009) (Illston, J.) (upholding denial of
21 issues of *Maxim* and *Maxim Espanol* magazine); *Ashker v. Schwarzenegger*, 2009 U.S. Dist.
22 LEXIS 25092 (N.D. Cal. 2009) (Wilken, J.) (upholding denial of art magazine *Juxtapoz*); *Self v.*
23 *Horel*, 2008 U.S. Dist. LEXIS 95623 (N.D. Cal. 2008) (upholding denial of "The Practical
24 Guide to Drawing").

25 Under *Turner*'s second factor, defendants have presented unrefuted evidence that under
26 their policy, inmates are allowed to exercise their rights under alternative means because they
27 are allowed a broad range of magazines, articles and other publications, including ones about
28 sex, as long as their purpose is not to sexually stimulate the recipient (Toby Decl. ¶ 4, Exh. A).

4

*See Thornburgh*, 490 U.S. at 418 (when jail mail regulations restricting sexually-oriented otherwise materials permit a broad range of publications, the second *Turner* factor is satisfied). The third *Turner* factor is also satisfied because sexually-oriented material can easily be circulated among inmates, increase sexual harassment of guards and diminish their authority, and exacerbate the problem of sexual aggression and non-consensual sex among inmates. *See ibid*. (circulation of sexually-oriented materials produces precisely the kind of "ripple effect" that *Turner*'s third factor is designed to address).

Under *Turner*'s fourth factor, there is no evidence of easy or obvious alternatives to banning such publications. Defendants have presented evidence that redacting or cutting out all of the offending words and pictures in every magazine or publication received in the jail would be cost-prohibitive, and that under their current practice the magazines are returned unaltered to the inmates upon their release from jail (Toby Decl. ¶ 9). Plaintiff has presented no evidence to the contrary. As defendants' evidence tilts all of the *Turner* factors in favor of finding the jail's policy constitutional, and plaintiff presents no evidence to the contrary, there is no genuine issue of material fact as to whether the policy is constitutional.

There is also no genuine issue of material fact as to whether the issues of *Maxim* and *GQ* denied in this case fall within the scope of defendants' policy. These magazines were not denied for explicitly depicting sexual acts or unclothed genitalia or the female areola, but rather on the grounds that they have "the purpose of arousing sexual stimulation in its intended audience" and jail officials had the "reasonable belief" that they would "jeopardize safety, security, rehabilitation or other legitimate Facility interests, or create a hostile work environment of other violation of [federal laws against workplace discrimination]" (Toby Decl. Exh. A at 3, 5-6; Exh. B).

The content of the magazines is not in dispute. They all contain pictures of women and some men in underwear, bikinis, and tight and scant clothing revealing breasts and buttocks, as well as articles about sex, including:

• a picture of a woman on her hands and knees bending forward with her buttocks spread,

5

1       • pictures of a woman wearing only thigh-high stockings and underwear with an article
2   about her "first stripper fight," "first girl-on-girl kiss," "first S&M scene," and "first phone sex
3   attempt,"
4        • a picture of a woman in lace-up and see-through bra and "thong" underwear with her
5   buttocks raised,
6       • a picture of a woman without a top or bra pulling down her underwear,
7       • a picture of a woman lying in a tub with her legs spread open wearing see-through
8   lingerie;
9       • advertisements for "Girls Gone Wild!" videos,
10      • a feature called "Sex" advising men on how to be sexually unfaithful to their partners;
11      • pictures of a woman kneeling on the floor and draped over a chair with her bottom out
12  wearing only lace underwear and exposing parts of her breasts;
13      • pictures of a man wearing only underwear, with his legs spread and his crotch in the
14  foreground, and another man holding the inner thigh of a model in short shorts with her shirt off
15  of her shoulder, and
16      • pictures of a topless woman draped over and preparing to kiss a man in a suit (Toby
17  Decl. Exh. B).  The foregoing material has the purpose of "arousing sexual stimulation" and, for
18  the reasons discussed under the *Turner* factors, can "reasonably" be found to jeopardize the
19  safety of the jail and/or create a hostile work environment (*id.* Exh. A).  No reasonable fact-
20  finder can dispute that the *Maxim* and *GQ* magazines denied to plaintiff were prohibited under
21  the terms of the jail policy.
22      Plaintiff's only argument in opposition is that the jail may not ban materials that do not
23  depict sexual intercourse or unclothed genitalia unless the materials have "no literary content
24  and is only specifically meant to arouse" (Opp. 1-2).  He gives as examples an underwear and
25  lingerie catalogue from *Victoria's Secret* and the *Sports Illustrated* swimsuit issue, and he
26  argues that because some people might not be sexually stimulated by them, they may not be
27  prohibited under the First Amendment (*ibid.*)  Plaintiff does not cite to any authority for this
28  proposition, nor is there any.  *Thornburgh*, *Mauro*, and *Bahrampour* and their progeny do not

6

hold that a prison may only ban materials that are universally perceived as sexually stimulating. Under the case law cited above, materials whose purpose is to sexually stimulate the intended recipients may be banned from a jail without offending the First Amendment, regardless of whether there are some individuals who may not be stimulated by them.

There is no genuine dispute of material fact as to whether the four magazines were denied pursuant to the jail policy, and there is no genuine issue of material fact as to whether the policy was constitutional under the four factors outlined in *Turner*. Consequently, defendants are entitled to summary judgment on plaintiff's claim.

## CONCLUSION

Defendants' motion for summary judgment (docket number 22) is **GRANTED.** The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: March  13 , 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.11\ELFAND0863.MSJ.wpd